*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

OSWALD JOHN TALLENT,

        Defendant-Appellant.

UNPUBLISHED
February 22, 2024

No. 362084
Wayne Circuit Court
LC No. 21-001053-01-FC

Before: PATEL, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

Following a bench trial, defendant was convicted of assault with intent to commit murder (AWIM), MCL 750.83, torture, MCL 750.85, assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84(1), and third-degree child abuse, MCL 750.136b(5). The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to concurrent prison terms of 28 to 50 years each for the AWIM and torture convictions, 10 to 20 years for the AWIGBH conviction, and two to four years for the child-abuse conviction. The court also assessed $1,300 in court costs. Defendant appeals as of right, and we affirm.

## I. BACKGROUND

Defendant's convictions arise from the March 30, 2020 assault of his wife and his then eight-year-old daughter at their Canton Township home. The prosecution presented evidence at trial that defendant attacked his wife with a gas-powered saw, causing serious injuries. Defendant's daughter ran from the house to summon help. Defendant caught his daughter, slammed her head on the concrete, and strangled her. Defendant's daughter escaped from his grasp and ran to a neighbor's house.

The defense did not deny that defendant assaulted his wife and daughter, but claimed that defendant was temporarily insane when he committed the crimes. The defense presented two experts who both concluded that defendant was competent to stand trial. However, both experts opined that defendant was legally insane when he committed the charged crimes and thus he was not criminally responsible. The prosecution's rebuttal expert opined that defendant was criminally

responsible. The trial court, sitting as the trier of fact, rejected defendant's defense of temporary insanity and found beyond a reasonable doubt that defendant was guilty of all of the charged offenses. The court made detailed factual findings on the record, discussed the defense of insanity, and explained why it rejected defendant's claim that he was legally insane at the time of the incident. The court concluded, "[W]hen you have a husband who is being told by his wife that she is going to divorce him and he'd better get a job and work, and then comes in and says [']you think you are so much better than me, die, I'll kill you,['] that shows to me that he's angry with her and it's not about spaceships, it's not about anything, it's about harming his family." Defendant moved for a new trial, which the court denied, explaining that it found that the defense experts' testimony was "not credible." This appeal followed.

## II. THE TRIAL COURT'S FINDINGS OF FACT

Defendant first argues that he is entitled to a new trial because the trial court's findings of fact were clearly erroneous and its conclusions of law were legally erroneous. We disagree.

We review a trial court's findings of fact at a bench trial for clear error and its conclusions of law de novo. *People v Pennington*, 323 Mich App 452, 464 n 7, 917 NW2d 720 (2018). De novo review "means that [the appellate court] review[s] the issues independently, with no required deference to the trial court." *People v Beck*, 504 Mich 605, 618; 939 NW2d 213 (2019). A factual finding is clearly erroneous if the appellate court is "left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). We give special deference to the trial court's findings when those findings are based on witness credibility. MCR 2.613(C).

## A. TRIAL COURT'S FAILURE TO REFERENCE M CRIM JI 7.14

Defendant argues that the trial court erred by failing to "reference or consider" M Crim JI 7.14, a jury instruction on permanent or temporary insanity. M Crim JI 7.14 provides:

> Legal insanity may be permanent or temporary. You must decide whether the defendant was legally insane at the time of the alleged crime.

The use note provides that "[t]he committee recommends that this instruction be given if requested."

This claim is without merit. Preliminarily, defendant faults the trial court for failing to expressly reference a *jury* instruction that legal insanity can be temporary or permanent. Defendant was tried before the court, not a jury. "In a bench trial, the trial court is presumed to know the applicable law." *People v Lanzo Constr Co*, 272 Mich App 470, 484; 726 NW2d 746 (2006). Defendant has not offered any authority that requires a trial court to cite and consider the content of a jury instruction, specifically M Crim JI 7.14, when issuing its verdict after a bench trial. A defendant abandons his claims when he fails to make a meaningful argument in support of his position. See MCR 7.212(C)(7); *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). Consequently, this claim may be considered abandoned.

Nevertheless, we conclude that defendant has not demonstrated any error. Defendant suggests that the trial court should have considered this jury instruction because he "had a clear defense of temporary insanity" and "the trial court seemed to misapply the law regarding temporary insanity" because, in its findings of fact, it stated: "Now he had heard voices and [it] was explained why he may have been able to conform himself at times but not others but he was able to conform himself legally—legally on other issues." Defendant further states that the instruction "would have provided legal support for the proposition that an individual can be legally insane at one moment and criminally responsible at another," "would have provided legal guidance to the trial court, which appeared to be confused regarding the concept of an individual's ability to conform themselves with the law at some times but not at others," and "would have also provided the necessary context to M Crim 7.13" because "it was the defense's position that [defendant] was temporarily insane at the time of the offense."

The record is clear that the trial court understood the applicable law, was aware that the defense theory at trial was that defendant was temporarily insane, and issued findings of fact and conclusions of law on the basis of what happened *at the time* of the charged offenses. When the court summarized the testimony of the two defense experts and the prosecutor's rebuttal expert, it focused on defendant's state of mind at the time he committed the crimes. Also, the court read M Crim JI 7.13[1] in its explanation of the defense of insanity and its rejection of that defense. And when the court subsequently denied defendant's motion for a new trial, it reiterated that it rejected the defense that defendant was legally insane at the time of the alleged crimes. Defendant has not demonstrated any error. The trial court is presumed to know the applicable law, *Lanzo Constr Co*, 272 Mich App at 484, and the record shows that the trial court was aware of defendant's affirmative defense of temporary insanity, specifically, that he was legally insane *when* he committed the offenses, and the substance of M Crim JI 7.13, which the trial court cited on the record, covered the substance of M Crim JI 7.14.

## B. ACCURACY OF THE TRIAL COURT'S FINDINGS

Next, defendant argues that the trial court erred by misstating the testimony of one of his experts "as it related to an alleged 'motive' for [defendant] to commit the offenses due to marital discord." Defendant states that "[d]espite [the expert's] clear testimony that marital relationships are emotionally charged and that the actions taken by [defendant] at the time of the offense were 'determined by psychosis,' the trial court interpreted this testimony as establishing a 'secondary motive' to commit the offenses." In particular, when summarizing the expert's testimony, the trial court stated that the marital discord between defendant and his wife when defendant committed the crimes "could be a secondary motive, not a primary motive."

---

[1] Crim JI 7.13 provides:

> You must judge the defendant's mental state at the time of the alleged crime. You may consider evidence about [his / her] mental condition before and after the crime, but only to help you judge [his / her] mental state at the time of the alleged crime.

In a bench trial, factual findings are sufficient if it appears that the trial court was aware of the issues in the case and correctly applied the law. *People v Smith*, 211 Mich App 233, 235; 535 NW2d 248 (1995). In making findings of fact, the trier of fact may make reasonable inferences from the evidence in the record, but may not make inferences completely unsupported by any direct or circumstantial evidence. *People v Vaughn*, 186 Mich App 376, 379-380; 465 NW2d 365 (1990).

Contrary to defendant's argument, there is no indication in the record that the trial court misstated or misunderstood the expert's opinion regarding the effect of the marital discord. Instead, there was evidence from which a trier of fact could reasonably infer that the doctor considered marital discord as a secondary reason for defendant's conduct. Indeed, the expert testified that "marital relationships are emotionally charged and they're fraught with ambivalence." But the doctor further stated:

> The point that he may have had negative or hostile aggressive feelings towards his spouse or feelings of resentment, those things come out in a marriage. Acting on it in this way under these circumstances, not only having to kill his wife, but his children, his parents, and himself, that coming out in such a bizarre way still tells me that it was *primarily* determined by a mental illness or a psychosis. [Emphasis added.]

It was clear to the trial court, as expressed in its findings, that the expert opined that defendant's conduct was "primarily" determined by a mental illness or psychosis, and not primarily marital discord. The mere fact that the expert did not use the precise phrase "secondary motive" does not mean that the court misstated or misunderstood his opinion. The record shows that the court was well-informed of the expert's findings and conclusions and there is no indication that the court misunderstood the expert's testimony.

The record evidence supports the trial court's finding that defendant did not prove his insanity defense by a preponderance of the evidence. The trial court explained, in detail, its reasons for crediting plaintiff's expert over the defense experts. In particular, the court took issue with the failure of the defense experts to consider that when defendant was assaulting his wife, he remarked, "you think you're so much better than me" and "why won't you just die," after his wife gave him an ultimatum related to obtaining a job and divorcing him. The court also emphasized that defendant made no remarks about alien spaceships or the Illuminati while he was assaulting his wife. Given defendant's remarks and conduct during the incident, a rational fact-finder could conclude that defendant was not legally insane—that he knew what he was doing—when he committed the crimes. Although defendant takes issue with the court's view of his defense experts' testimony, "a trier of fact is not bound to accept the opinion of an expert." *People v Kanaan*, 278 Mich App 594, 620; 751 NW2d 57 (2008) (cleaned up). And we cannot interfere with the trier of fact's determinations of credibility or the weight of the evidence. *Id*. at 619. Accordingly, defendant is not entitled to a new trial.

## III. INEFFECTIVE ASSISTANCE

Defendant further argues that defense counsel was ineffective for failing to request that the trial court consider and "expressly reference" M Crim JI 7.14 in its findings. We disagree.

The United States and Michigan Constitutions afford criminal defendants the right to effective assistance of counsel. *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023), citing Const 1963, art 1, § 20; US Const Am VI; *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). An ineffective-assistance-of-counsel claim presents a "mixed question of fact and constitutional law." *Yeager*, 511 Mich at 487. Constitutional questions are reviewed de novo, while the trial court's findings of fact are reviewed for clear error. *Id*.

To preserve a claim of ineffective assistance of counsel for appellate review, a defendant must do one of three things: raise the issue in a motion for a new trial, raise the issue in a motion for an evidentiary hearing, *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012), or raise the issue in a motion to remand for an evidentiary hearing, *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Defendant did none of these things and thus our review of this unpreserved issue is limited to errors apparent on the record. *People v Head*, 323 Mich App 526, 538-539; 917 NW2d 752 (2018).

To prevail on a claim of ineffective assistance, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that [the] outcome would have been different." *Yeager*, 511 Mich at 488 (cleaned up). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (cleaned up). The effective assistance of counsel is presumed, and the burden is on the defendant to establish the contrary. *People v Roscoe*, 303 Mich App 633, 644; 846 NW2d 402 (2014).

"Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses," and "[f]ailing to request a particular jury instruction can be a matter of trial strategy." *People v Thorne*, 322 Mich App 340, 347; 912 NW2d 560 (2017) (cleaned up). As discussed, (1) defendant has failed to offer supporting authority for his claim that the trial court, sitting as the trier of fact, was required to specifically read and consider the content of a jury instruction, specifically M Crim JI 7.14, when issuing its verdict after a bench trial; (2) the trial court is presumed to know the applicable law, *Lanzo Constr Co*, 272 Mich App at 484; (3) the record clearly shows that the trial court knew that the defense theory at trial was that defendant was legally insane *when* he committed the offense (thereby obviating any need to cite a jury instruction that insanity may be permanent or temporary); and (4) the substance of M Crim JI 7.13, which the trial court quoted on the record, covered the substance of M Crim JI 7.14. Defense counsel's decision not to request that the court consider and expressly cite M Crim JI 7.14 was not objectionably unreasonable, and did not prejudice defendant. Failure to make a "futile" request does not constitute ineffective assistance of counsel, *Head*, 323 Mich App at 539, nor will we second-guess matters of trial strategy or "assess counsel's competence with the benefit of hindsight." *People v Abcumby-Blair*, 335 Mich App 210, 237; 966 NW2d 437 (2020) (cleaned up).

## IV. DISPROPORTIONATE AND UNREASONABLE SENTENCES

Next, defendant argues that his within-guidelines sentences for torture and AWIM are unreasonable and disproportionate. We disagree.

"Sentencing decisions are reviewed for an abuse of discretion." *People v Boykin*, 510 Mich 171, 182; 987 NW2d 58 (2022). "[W]ithin-guidelines sentences are to be reviewed for

reasonableness[.]" *People v Posey*, 512 Mich 317, 359; ___ NW2d ___ (2023) (Docket No. 162373) (Opinion by BOLDEN, J.). "[T]he key to reasonableness review is whether the sentence is proportionate." *Id.* Thus, "the proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1999), 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017).

"When a trial court sentences a defendant within the guidelines' recommended range, it creates a presumption that the sentence is proportionate." *Posey*, 512 Mich at 360. To overcome that presumption, "the defendant bears the burden of demonstrating that their within-guidelines sentence is unreasonable or disproportionate." *Id*. at 359. Factors that may be considered by a trial court under the proportionality standard include, but are not limited to:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Lampe*, 327 Mich App 104, 126; 933 NW2d 314 (2019) (cleaned up).]

In this case, it is undisputed that the applicable guidelines range was 135 to 337 months, and the trial court sentenced defendant to a minimum term of 336 months, which is within the guidelines range. Therefore, defendant's sentence is presumptively proportionate. *Posey*, ___ Mich at 360. A defendant may overcome the presumptive proportionality of a within-guidelines sentence by "present[ing] unusual circumstances that would render the presumptively proportionate sentence disproportionate." *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013) (cleaned up); see also *Milbourn*, 435 Mich at 636 ("Conceivably, even a sentence within the sentencing guidelines could be an abuse of discretion in unusual circumstances."). "Unusual" means "uncommon, not usual, rare." *People v Sharp*, 192 Mich App 501, 505; 481 NW2d 773 (1992) (cleaned up).

Defendant argues that his 28-year minimum sentences are disproportionate and unreasonable because the trial court failed to consider the extensive evidence presented at trial regarding his mental state at the time of the offenses. Although defendant's two experts found that he was competent to stand trial, defendant emphasizes that his experts both testified that he was not criminally responsible because he was legally insane at the time of the incident. Defendant recognizes that "the court ultimately rejected his insanity defense," but then cursorily states that "this evidence was still relevant at the time of sentencing as [the defense] provided mitigating evidence regarding [defendant's] culpability at the time of the offenses." However, the trial court, as the trier of fact, rejected defendant's defense of insanity and found him guilty as charged. The trial court made it very clear, especially in its decision denying defendant's motion for a new trial, that it found that the testimony of the defense experts regarding defendant's mental state was "*not credible*." Defendant has provided no analysis or legal support for his cursory claim that evidence rejected by the trier of fact at trial must be considered by the court at sentencing. Defendant has not presented an unusual circumstance to overcome the presumptive proportionality of his within-guidelines sentences. *Bowling*, 299 Mich App at 558.

We further note that the prosecutor requested a sentence that exceeded defendant's guidelines range, but the trial court imposed a sentence within the guidelines as requested by defense counsel. The trial court explained at sentencing that defendant's actions caused trauma and injuries to his family, and stated that the facts in this case were "extremely disturbing." The court articulated that "[n]o wife should ever have to have a circular saw taken to them, and being cut up," "[n]o child should have their head banged, over and over again, on concrete," and that the "only blessing" is that defendant's wife and children are still alive. The court concluded that a within-guidelines sentence was appropriate, but "based on the horrific facts" in this case, a sentence near the top of the guidelines was "more than appropriate." The court's comments at sentencing demonstrate that it considered the circumstances of the offense and the applicable guidelines range to determine an appropriate penalty. Defendant has failed to present any unusual circumstances sufficient to overcome the presumption of proportionality.

## V. CONSTITUTIONALITY OF MCL 769.1K(1)(B)(*iii*)

In his last claim, defendant challenges the trial court's assessment of court costs under MCL 769.1k(1)(b)(*iii*). He argues that the statute is unconstitutional because it (1) infringes on his due-process right to appear before an impartial judge because trial court judges are incentivized to convict defendants in order to impose costs to raise money to fund the courts, and (2) violates the separation of powers because the funding arrangement created by the statute prevents the judicial branch from accomplishing its constitutionally assigned functions of maintaining impartiality in criminal proceedings. As defendant recognizes, this Court considered and rejected these same arguments in *People v Johnson*, 336 Mich App 688, 692-705; 971 NW2d 692 (2021). Defendant has failed to present any basis for distinguishing *Johnson*, which we are bound to follow under MCR 7.215(J)(1). Therefore, we reject this claim of error.

Affirmed.

/s/ Sima G. Patel
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan